**LAW OFFICES OF MATTHEW C. DAVIDSON, LTD**
1859 N Grand Ave, Suite 1
Nogales, AZ 85621-1386
(520) 281-0433
Matthew C. Davidson
State Bar No. 015021

**MARCHETTI LAW, PLLC**
290 N. Meyer Avenue
Tucson, Arizona 85701
(520) 334-2067
Brian Marchetti, brian@yourtucsonlawfirm.com
State Bar No. 027193

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| ASHLEY CERVANTES, a single woman,<br><br>　　　　　Plaintiff<br>v.<br><br>UNITED STATES OF AMERICA; UNITED STATES CUSTOMS AND BORDER PROTECTION AGENT SHAMEKA LEGGETT and "JOHN DOE" LEGGETT; UNKNOWN UNITED STATES CUSTOMS AND BORDER PROTECTION AGENTS; HOLY CROSS HOSPITAL, INC; ~~ASCENSION ARIZONA, INC.~~; PATRICK F. MARTINEZ AND "JANE DOE" MARTINEZ; <span style="color:red">QUANTUM PLUS, INC., dba TEAMHEALTH WEST;</span> JOHN DOES 1-5; JANE DOES 1-5; XYZ CORPORATIONS 1-5; ABC PARTNERSHIPS 1-5<br><br>　　　　　Defendants | **<span style="color:red">FIRST AMENDED</span> COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

　　　　For her Complaint, Plaintiff Ashley Cervantes ("Ashley") allege as follows:

**Parties, Jurisdiction and Venue**

1. Ashley is a resident of Santa Cruz County, Arizona.

2. This action arises, in part, under 28 U.S.C. § 2671, *et. seq.*, the Federal Tort Claims Act ("FTCA") and is against Defendant United States of America through its agency, the United States Customs and Border Protection ("CBP").

3. Defendant United States is liable pursuant to the FTCA for the tortious conduct of federal employees while acting within the scope of their employment. 28 U.S.C. §2671, *et seq*. Defendants Unknown United States Customs and Border Protection Agents are employees of CBP. At all times relevant to this Complaint, these agents were acting in the course and within the scope of their employment. They are sued in their individual capacities. Those federal agents are referred to herein as the "CBP Agents" and will be named as their true identities become known.

4. Defendant United States Customs and Border Protection Agent Shameka Leggett ("CBP Agent Leggett") is an employee of CBP. At all times relevant to this Complaint, she was acting in the course and within the scope of her employment. She is sued in her individual capacity. Defendant "John Doe" Leggett is her spouse and CBP Agent Leggett was, at all times material, acting on behalf of her marital community. CBP Agent Leggett is included in the group of CBP Agents described and referred to in ¶ 3, above.

5. Defendant Holy Cross Hospital, Inc. is an Arizona Corporation doing business in Santa Cruz County, Arizona.

6. ~~Defendant Ascension Arizona, Inc. is an Arizona Corporation doing business in Santa Cruz County, Arizona. At all times material to this lawsuit, Ascension Arizona was known as Carondelet Health Network, Inc. On or around October 13, 2015, Carondelet Health Network changed its corporate name to Ascension Arizona, Inc.~~

7. Defendant~~s~~ Holy Cross Hospital, Inc. ~~and Ascension Arizona, Inc. are collectively referred to herein as Holy Cross and, in fact,~~ do~~es~~ business as Holy Cross Hospital. To the extent other parent companies and/or affiliate entities are discovered to also do business as Holy Cross, those entities are included in this lawsuit as XYZ defendants and Ashley will seek leave to substitute those entities' true identity, if necessary.

8. Defendant Quantum Plus, Inc., d/b/a TeamHealth West ("TeamHealth") is a foreign corporation licensed to conduct business in the State of Arizona and doing business in Santa Cruz County, Arizona. Upon information and belief, TeamHealth provided medical staffing to Holy Cross at all times material to this lawsuit.

~~8.~~9. Defendant Patrick Martinez, MD ("Dr. Martinez") is a medical doctor employed by Holy Cross and/or TeamHealth and who, at all times material, practiced medicine at Holy Cross. At all times relevant to this Complaint, he was acting in the course and within the scope of his employment and/or as Holy Cross and/or TeamHealth's agent/servant. He is sued in his individual capacity. Defendant "Jane Doe" Martinez is his wife and Dr. Martinez was, at all times material, acting on behalf of his marital community.

~~9.~~10. The Defendants who are fictitiously designated are so designated because their true identities are currently unknown to Ashley. John Does 1-5 and Jane Does 1-5 are

- 3 -

individuals who may be doing business in Santa Cruz County, Arizona, and may have caused events to occur out of which Plaintiff's claims arise. XYZ Corporations 1-5 and/or ABC Partnerships 1-5 are corporations and/or partnerships and/or other business entities that may be doing business in Arizona and may have caused events to occur out of which Plaintiff's claims arise. The fictitiously designated individual Defendants were acting for and on behalf of their respective marital communities, and all of the fictitious Defendants were acting in their capacities and/or were acting as agents, servants and/or employees of other named and/or fictitiously named Defendants. Ashley requests leave to amend her Complaint, if necessary, to allege the true names of the Defendants once their identities have been accurately ascertained.

10.11.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because Ashley's claims arise under the Constitution and laws of the United States of America.

11.12.  This Court has subject matter jurisdiction over Defendant United States for the tortious actions of federal employees pursuant to 28 U.S.C. §1346(b)(1).

12.13.  This Court has supplemental subject matter jurisdiction over Defendants Holy Cross, TeamHealth and Dr. Martinez pursuant to 28 U.S.C. §1367(a) because the claims asserted against those Defendants are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

~~13.~~14.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) and 28 U.S.C. § 1402(b) because the incident giving rise to this action occurred in this district and Ashley resides in the same.

**Ashley Entered the United States without Any Contraband or Drugs**

~~14.~~15.  On the morning of Saturday, October 14, 2014, Ashley, a natural-born U.S. Citizen, crossed the international border at the Nogales Port of Entry on foot.

~~15.~~16.  At that time, Ashley crossed from Nogales, AZ into Nogales, Sonora to have breakfast at a restaurant she frequented.

~~16.~~17.  After enjoying her breakfast, Ashley returned to the Port of Entry and, again on foot, crossed back into Nogales, AZ.

~~17.~~18.  Ashley did not possess any contraband at the time she left or re-entered the United States. She identified herself as a U.S. citizen and presented the border official with her Birth Certificate and her State of Arizona identification card.

~~18.~~19.  Upon Ashley's re-entering the United States, she was approached and confronted by a CBP Agent who accused her of possessing illegal drugs. Ashley denied the same.

~~19.~~20.  The CBP Agent became more aggressive in his questions and accusations. That CBP Agent directed Ashley to follow him to a "detention" room, ostensibly for additional questioning. Over the course of the next few hours, Ashley:

   a.  was handcuffed to a chair;

- 5 -

    b. had a number of CBP K9's sniff her person (a violation of CBP policy, which prohibits the use of K9's on a person); and,

    c. was taken into a separate room, patted down, and asked to squat so female investigators could visually inspect her.

20.21.  Ashley, an extremely petite eighteen-year-old, was not "mirandized" or advised of her rights as a U.S. citizen during that lengthy custodial detention and interrogation for which she did not provide a knowing and/or willful consent. Moreover, her request to call her mother was denied. In addition, the scope and length of the custodial detention exceeded the "border search exception" to the extent such exception even applied.

21.22.  The invasive pat-downs and searches conducted by the CBP Agents at the Nogales Port of Entry did not produce any evidence of contraband or internal drug smuggling.

22.23.  Because Ashley did not possess any contraband, the K9's that sniffed her either did not alert or the response was not a proper alert.

23.24.  After no contraband of any kind was found on Ashley's person, the CBP Agents escalated the method and manner of their searches by requesting authority to transport Ashley to a medical facility.

24.25.  As set out in the United States Public Health Services Division of Immigration Health Services' Treatment Authorization Request ("TAR"), which was signed by CBP Agent Leggett, Ashley was "diagnosed" as an alleged "potential internal carrier of foreign substance" and the "course of treatment" was identified as "request for X-Ray". It is

unclear what possible basis existed for CBP to use an Immigration Health Services' form or procedure on a citizen of the United States.

## The Searches Continued Without Consent, a Warrant, or Sufficient Suspicion of Criminal Activity

25.26.  Ashley was then taken, in custody and without her consent or any legal basis, to Defendant Holy Cross Hospital to allegedly undergo X-Rays.

26.27.  Ashley was transported in handcuffs and was lead into Holy Cross cuffed.

27.28.  From the time of her arrival until she was released from Holy Cross, Ashley did not present any symptoms consistent with internal drug smuggling nor did she exhibit any symptoms of feeling sick or unwell. She was, however, in the midst of her menstrual cycle.

28.29.  Without obtaining a knowing or willful consent, or obtaining an accurate detailed medical history, agents/servants/employees of Holy Cross and/or TeamHealth, including Dr. Martinez, searched Ashley for contraband.

29.30.  The Holy Cross records from Ashley's time at the facility include a number of factual inaccuracies, including inaccurately setting out that Ashley was accompanied by her mother and arrived in a private vehicle. In reality, Ashley was transported in a CBP vehicle. Her handcuffs were not removed until she changed into a hospital gown for the alleged purpose of undergoing an X-Ray.

30.31.  Ashley was never X-rayed, despite that being the only "course of treatment" authorized by the TAR.

## Ashley's Anus and Vagina Were Probed without a Warrant, Consent or Any Suspicion of Internal Drug Smuggling

31.32.  Even though prior searches resulted in no evidence of internal drug smuggling, the CBP Agents and Dr. Martinez continued the intrusion on Ashley's body without her knowing, willful consent and without a warrant.

32.33.  In fact, Dr. Martinez, a male physician, entered Ashley's room and, after asking a few cursory questions, brutally invaded her body on a warrantless and unjustified search for contraband.

33.34.  Dr. Martinez forcefully and digitally probed Ashley's vagina and anus.

34.35.  Ashley had never before been to a gynecologist and, for the remainder of her life, will always remember that her first pelvic and rectal exams were under the most inhumane circumstances imaginable to a U.S. citizen at a hospital on U.S. soil.

35.36.  Ashley was shocked and humiliated by these exceedingly intrusive searches. That an audience of CBP Agents and Holy Cross and/or TeamHealth staff observed her being probed compounded her feeling of degradation.

36.37.  No drugs were found inside Ashley, who was then discharged from Holy Cross and transported, by CBP, back to the Port of Entry.

37.38.  Ashley was released from custody without any charges at approximately 8:00 p.m., only after enduring roughly seven hours of dehumanizing, invasive and degrading searches.

38.39.  Throughout the unreasonable searches of Ashley's body cavities, she continually denied smuggling drugs internally and continually refused consent for each search.

39.40.  At no point during the searches of Ashley did the CBP Agents obtain a warrant authorizing a search of her body.

40.41.  The searches conducted by the CBP Agents, Holy Cross and/or TeamHealth and Dr. Martinez injured Ashley physically, mentally and emotionally. Her labia, vaginal opening, and anus were left raw and sore and she felt violated, demeaned and powerless as a result of the searches.

**The Searches That Injured Ashley Were the Inevitable Result of Holy Cross and/or TeamHealth's Custom and Practice of Handling Patients Brought by CBP Agents**

41.42.  Upon information and belief, Holy Cross and/or TeamHealth's policies on searches by hospital personnel does not permit an invasion of a person's body for purposes of a search without either consent or a search warrant. However, upon information and belief, Holy Cross and/or TeamHealth agents/employees and CBP agents routinely conduct invasive cavity searches without a warrant, consent or sufficient suspicion to justify the searches.

42.43.  Upon information and belief, Holy Cross and/or TeamHealth's doctors and nurses are not trained on conducting law enforcement searches nor on the constraints the Fourth Amendment places on those searches. Upon information and belief, Holy Cross and/or TeamHealth's staff have no process in place to ensure that searches performed by hospital staff comport with constitutional limits. As a result, Holy Cross and/or

- 9 -

TeamHealth's personnel, who are untrained in the law, inevitably conduct invasive, unreasonable law enforcement searches without sufficient justification and violate the constitutional rights of the persons searched.

43.44.  Given Holy Cross' proximity to the border, its and/or TeamHealth's emergency room personnel predictably confront situations where CBP officials bring individuals in for law enforcement searches without a warrant. Consequently, Holy Cross and/or TeamHealth's failure to train its personnel on the constitutional limits constraining law enforcement searches amounts to a deliberate indifference to the violation of individuals' constitutional rights, including Ashley's rights.

44.45.  Upon information and belief, these searches are not conducted by the doctors alone but also routinely involve supervising CBP agents. Upon information and belief, Holy Cross and/or TeamHealth's personnel and CBP agents' routine invasion of a person's body for law enforcement purposes in an unreasonable manner and without a warrant or sufficient suspicion amounts to a pattern and practice.

45.46.  Holy Cross and/or TeamHealth and CBP's pattern and practice of jointly conducting law enforcement searches in an unreasonable manner and without a warrant or sufficient suspicion, and without training Holy Cross and/or TeamHealth's employees on the constitutional limits constraining those searches, injured Ashley and violated her constitutional rights.

**Compliance with FTCA Administrative Claim Requirement**

46.47.  A timely written Notice of Claim was presented to CPB on June 12, 2015.

47.48. CPB acknowledged receiving that Notice of Claim but did not respond in any substantive manner. As such, the Claim was deemed denied six months after it was received, or on December 12, 2015.

**COUNT ONE**
**Unreasonable Seizure, False Arrest and False Imprisonment in Violation of the Fourth Amendment to the U.S. Constitution Against the CBP Agents**
(*Bivens* Claim)

48.49. Ashley incorporates and realleges each and every previous allegation as though fully set forth herein.

49.50. As a direct result of their actions set forth in this Complaint, the Defendant CBP Agents acted under the color of federal law to deprive Ashley of her right to be free from unreasonable seizures, by seizing, arresting and detaining her without reasonable suspicion or probable cause that she was committing a crime, in violation of the Fourth Amendment to the U.S. Constitution.

50.51. This cause of action for the violation of Ashley's Fourth Amendment right is brought pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

**COUNT TWO**
**Unreasonable Search in Violation of the Fourth Amendment to the U.S. Constitution Against the CBP Agents**
(*Bivens* Claim)

51.52. Ashley incorporates and realleges each and every previous allegation as though fully set forth herein.

52.53.  As a direct result of their actions set forth in this Complaint, the Defendant CBP Agents acted under the color of federal law to deprive Ashley of her right to be free from unreasonable search in violation of the Fourth Amendment to the U.S. Constitution by 1) searching her person without reasonable suspicion or probable cause that she was committing a crime; and/or 2) searching her person in a highly unreasonable manner that invaded her right to bodily integrity and privacy.

53.54.  This cause of action for the violation of Ashley's Fourth Amendment right is brought pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

## COUNT THREE
### Deprivation of Due Process in Violation of the Fifth Amendment to the U.S. Constitution Against the CBP Agents
**(*Bivens* Claim)**

54.55.  Ashley incorporates and realleges each and every previous allegation as though fully set forth herein.

55.56.  As a direct result of their actions set forth in this Complaint, the Defendant CBP Agents acted under the color of federal law to deprive Plaintiff of her right to due process by acting in a manner that shocks the conscience in violation of the Fifth Amendment to the U.S. Constitution.

56.57.  This cause of action for the violation of Ashley's Fifth Amendment right is brought pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

## COUNT FOUR

- 12 -

**Unreasonable Seizure, False Arrest and False Imprisonment in Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution Against**

**Defendant Martinez ~~and Holy Cross~~**

(***Bivens*** **Claim** ~~**/ 42 U.S.C. §1983 Claim**~~)

~~57.~~58.  Ashley incorporates and realleges each and every previous allegation as though fully set forth herein.

~~58.~~59.  As a direct result of his actions set forth in this Complaint and at the request and direction of the CBP Agents, Dr. Martinez acted under the color of state and federal law to deprive Ashley of her right to be free from unreasonable seizures by seizing, arresting and detaining her without reasonable suspicion or probable cause that she was committing a crime, in violation of the Fourth Amendment to the U.S. Constitution, as incorporated by the Fourteenth Amendment.

~~59.     The custom and practice of Holy Cross caused the violation of Ashley's right to be free from unreasonable seizures.~~

60.     This cause of action for the violation of Ashley's Fourth and Fourteenth Amendment right is brought pursuant to ~~42 U.S.C. §1983 and/or~~ *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

**COUNT FIVE**

**Unreasonable Search in Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution Against Defendant Martinez ~~and Holy Cross~~**
(***Bivens*** **Claim** ~~**/ 42 U.S.C. §1983 Claim**~~)

61.     Ashley incorporates and realleges each and every previous allegation as though fully set forth herein.

62. As a direct result of his actions set forth in this Complaint and at the request and direction of the CBP Agents, Dr. Martinez acted under the color of state and federal law to deprive Ashley of her right to be free from unreasonable search in violation of the Fourth Amendment to the U.S. Constitution, as incorporated by the Fourteenth Amendment, by 1) searching her person without reasonable suspicion or probable cause that she was committing a crime; and/or 2) searching her person in a highly unreasonable manner that invaded her right to bodily integrity and privacy.

63. ~~The custom and practice of Holy Cross caused the violation of Ashley's right to be free from unreasonable searches.~~

~~64.~~63. This cause of action for the violation of Ashley's Fourth and Fourteenth Amendment right is brought pursuant to ~~42 U.S.C. §1983 and/or~~ *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

**COUNT SIX**
**Deprivation of Due Process in Violation of the Fifth Amendment to the U.S. Constitution Against Defendant Martinez ~~and Holy Cross~~**
**(*Bivens* Claim ~~/ 42 U.S.C. §1983 Claim~~)**

~~65.~~64. Ashley incorporates and realleges each and every previous allegation as though fully set forth herein.

~~66.~~65. As a direct result of his actions set forth in this Complaint, and at the request and direction of the CBP Agents, Dr. Martinez acted under the color of state and federal law to deprive Ashley of her right to due process by acting in a manner that shocks the conscience in violation of the Fourteenth Amendment to the U.S. Constitution.

67.   The custom and practice of Holy Cross caused the violation of Ashley's right to due process.

68.66.  This cause of action for the violation of Ashley's Fifth and Fourteenth Amendment right is brought pursuant to 42 U.S.C. §1983 and/or *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

## COUNT SEVEN
## Negligent Hiring, Training and Supervision against Holy Cross and TeamHealth

69.67.  Ashley incorporates and realleges each and every previous allegation as though fully set forth herein.

70.68.  Holy Cross and/or TeamHealth hired, trained and supervised the employees/agents/servants who dealt with Ashley while she was in Holy Cross and/or TeamHealth's care.

69.   Holy Cross and/or TeamHealth was were negligent in hiring, training and supervising their agents/employees who dealt with Ashley in that those agents/employees were not trained on conducting law enforcement searches nor on the constraints the Fourth Amendment places on those searches.

71.70.  As a direct and proximate cause of Holy Cross and/or TeamHealth's negligence, Ashley suffered injuries and damages.

## COUNT EIGHT
## Assault and Battery Claim Against the United States for the Tortious Actions of its Federal Agents

72.71.     Ashley incorporates and realleges each and every previous allegation as though fully set forth herein.

73.72.  The CBP Agents intentionally and knowingly caused physical contact with Ashley when they knew or should have reasonably believed that she would regard the contact as offensive or provocative by conducting invasive searches of her and by directing invasive searches of her.

74.73.  The CBP Agents committed these acts as employees of the United States while acting in the scope of their employment: they acted within the scope of the general authority granted to them, in furtherance of their employer's business, and for the accomplishment of the objectives for which they were hired.

75.74.  Pursuant to the Federal Tort Claims Act, Defendant United States is liable for the CBP Agents' actions.

## COUNT NINE
### False Arrest Claim Against the United States for the Tortious Actions of its Federal Agents

76.75.  Ashley incorporates and realleges each and every previous allegation as though fully set forth herein.

77.76.  Without probable cause, the CBP Agents intentionally, knowingly and forcibly restrained Ashley against her will by subjecting her and directing that she be subjected to approximately seven hours of invasive searches while in handcuffs.

78.77.   The CBP Agents committed these acts as employees of the United States while acting in the scope of their employment: they acted within the scope of the general authority granted to them, in furtherance of their employer's business, and for the accomplishment of the objectives for which they were hired.

79.78.   Pursuant to the Federal Tort Claims Act, Defendant United States is liable for the CBP Agents' actions.

## JURY TRIAL DEMANDED

80.79.   Ashley respectfully demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Ashley respectfully asks this Court to:

a. declare that the actions of Defendants violated the U.S. Constitution;

b. award compensatory damages in an amount to be determined at trial;

c. award punitive damages in an amount to be determined at trial;

d. award attorney's fees and costs pursuant to 42 U.S.C. §1988; and

f. grant such other and further relief as this Court deems proper

Filed this 8th 4th day of JuneOctober, 2016

                                           **MARCHETTI LAW, PLLC**

                                           By:   /s/ Brian Marchetti
                                                  Brian Marchetti
                                                  *Attorney for Plaintiff*