LAW OFFICES
BROENING OBERG WOODS & WILSON
PROFESSIONAL CORPORATION
POST OFFICE BOX 20527
PHOENIX, ARIZONA 85036
(602) 271-7700

Michelle L. Donovan (027958)
Jessica J. Kokal (029042)
Minute Entries/Orders to: cjg@bowwlaw.com

Attorneys for Defendant Martinez

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| ASHLEY CERVANTES, a single woman, | NO. 4:16-CV-00334-CKJ |
| Plaintiff, | |
| vs. | **DEFENDANT PATRICK F. MARTINEZ'S MOTION TO DISMISS PLAINTIFF'S *BIVENS* CLAIMS** |
| UNITED STATES OF AMERICA; UNITED STATES CUSTOMS AND BORDER PROTECTION AGENT SHALEKA LEGGETT and "JOHN DOE" LEGGETT; UNKNOWN UNITED STATES CUSTOMS AND BORDER PROTECTION AGENTS; HOLY CROSS HOSPITAL, INC.; ASCENSION ARIZONA, INC.; PATRICK F. MARTINEZ AND "JANE DOE" MARTINEZ; JOHN DOES 1-5; JANE DOES 1-5; XYZ CORPORATIONS 1-5; ABC PARTNERSHIPS 1-5, | *(Assigned to the Honorable Cindy Jorgenson)* |
| Defendants. | |

Defendant Patrick F. Martinez, M.D. (Defendant "Dr. Martinez"), by and through counsel undersigned, hereby moves for dismissal of the *Bivens* claims alleged against him. Plaintiff's claims allege conduct that is encompassed by the traditional state tort law of medical malpractice, codified at A.R.S. § 12-561, *et. seq.* Because there is no basis to

expand the law and imply a *Bivens* claim where an adequate state law remedy exists against a non-governmental official, the *Bivens* claims against Dr. Martinez should be dismissed. Further, as Plaintiff's only claims against Dr. Martinez are these unauthorized *Bivens* claims, Defendant Dr. Martinez respectfully requests that he be dismissed from this matter in full.

## I. FACTUAL BACKGROUND

Plaintiff alleges that on October 14, 2014, she was stopped while re-entering the United State from Nogales, Sonora, Mexico due to an alert by the Border Patrol K-9 unit "drug dogs". She was transferred to Holy Cross Hospital where she consented to and then underwent a pelvic and rectal exam performed by Dr. Martinez. Plaintiff alleges that Dr. Martinez engaged in the following conduct during the consensual exam:

> 32.  Dr. Martinez, a male physician, entered Ashley's room and, after asking a few cursory questions, brutally invaded her body on a warrantless and unjustified search for contraband.
>
> 33.  Dr. Martinez forcefully and digitally probed Ashley's vagina and anus.

(See Pl.'s First Amd. Complaint ¶¶ 32-33). As a result of this alleged conduct, Plaintiff's Complaint alleges three counts of *Bivens* claims against Dr. Martinez, styled as follows:

**COUNT FOUR**
**Unreasonable Seizure, False Arrest and False Imprisonment in Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution**
(***Bivens* Claim**)

**COUNT FIVE**
**Unreasonable Search in Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution**
(***Bivens* Claim**)

**COUNT SIX**
**Deprivation of Due Process in Violation of the Fifth Amendment to the U.S. Constitution**
(***Bivens* Claim**)

2

(See Pl.'s First Amd. Complaint, Counts 4-6). No other Counts are asserted against Dr. Martinez.

## II. THERE IS NO BASIS TO IMPLY A *BIVENS* CLAIM TO DR. MARTINEZ'S ALLEGED CONDUCT.

*Bivens* claims are rooted in the United States Supreme Court's holding in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S. Ct. 1999 (1971). Therein, the Court held that the Fourth Amendment implicitly authorizes a court to order federal agents to pay damages to a person injured by the agents' violation of the Amendment's strictures.

Since *Bivens* was decided, "the Court has extended its holding only twice, to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, *or* to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 71, 122 S.Ct. 515, 521 (2001) (emphasis in original). "Where such circumstances are not present, we have consistently rejected invitations to extend *Bivens…" Id.* ; *see, e.g. Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.3d.2d 15 (1980) (inferring a right of action against individual prison officials where the plaintiff's only alternative was a Federal Tort Claims Act claim against the United States).

Importantly, the Court has expressly declined to recognize *Bivens* remedies in cases where the claim focuses on conduct that falls within the scope of traditional state tort law. *See, e.g. Minneci v. Pollard*, 132 S.Ct. 617 (2012); *Malesko* at 62, 122 S.Ct. at 516. *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 62, 122 S.Ct. 515, 516.

### A. There is No Basis to Imply *Bivens* Claims Where an Adequate State-Tort Remedy Exists.

In *Minneci v. Pollard*, *supra*, the Court declined to recognize a *Bivens* action, finding that a state law remedy existed which prevented *Bivens* from being implied. Therein, plaintiff Pollard was a prisoner at a federal facility operated by a private corrections

3

corporation. 132 S.Ct. at 620. Pollard alleged that several of the employees of the private corrections corporation, including members of the medical staff, had deprived him of adequate medical care, thereby violating the Eight Amendment's prohibition against "cruel and unusual punishment." *Id.* In considering whether the Eighth Amendment Pollard with a *Bivens* action, the Court reviewed and cited a number of prior instances where the Court had considered whether to imply a *Bivens* action by applying the following two step analysis:

> [T]he decision whether to recognize a *Bivens* remedy may require two steps. In the first place, there is the question whether any alternative, existing process for protecting the [constitutionally recognized] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding" remedy in damages…. But even in the absence of an alternative, a *Bivens* remedy is a subject of judgment: 'the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of a federal litigation.'

*Id.* at 618 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550, 127 S. Ct. 2588 (2007) (quoting *Busch v. Lucas*, 462 U.S. 367, 378, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)) (rejecting a claim that the Fifth Amendment impliedly authorized a *Bivens* action that would permit landowners to obtain damages from government officials who unconstitutionally interfered with their exercise of property rights)).

Applying that analysis to the facts at hand, and noting that the Court had consistently decided against the expansion of *Bivens* actions since the 1980 decision in *Carlson*, the *Minneci* Court declined to recognize a *Bivens* action. *See Id.* at 622-23. The *Minneci* court found that Pollard's Eighth Amendment claim against employees at a privately run federal prison was governed by an "alternative, existing process" under state tort law that was

capable of protecting the constitutional interests at stake. *Id.* at 619. The Court held that "[t]he existence of that alternative remedy constitutes a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding" damages remedy. *Id.* at 623 (quoting *Wilkie*, 551 U.S. at 550). This same considerations are present in this case given the available tort action defined in the Medical Malpractice Act. A.R.S. § 12-561 *et seq.*

### A. A Medical Malpractice State Law Claim is the Proper Remedy for Plaintiff.

A.R.S. § 12-561 defines a "medical malpractice action" or "cause of action for medical malpractice" as:

> [A]n action for injury or death against a licensed health care provider based upon such provider's alleged negligence, misconduct, errors or omissions, or breach of contract in the rendering of health care, medical services, nursing services or other health-related services for the rendering of such health care, medical services, nursing services or other health-related services, without express or implied consent including an action based upon the alleged negligence, misconduct, errors or omissions or breach of contract in collecting, processing or distributing whole human blood, blood components, plasma, blood fractions or blood derivatives.

Dr. Martinez's alleged misconduct giving rise to this lawsuit, occurred in a hospital Emergency Department whereby Dr. Martinez was the physician assigned to Ms. Cervantes upon arrival to provide a medical screening examination and further care as indicated. As such, Dr. Martinez's interactions with Plaintiff and examination is conduct during the rendering of medical or other health-related services. Plaintiff's allegation that Dr. Martinez's examination was done without her consent is specifically included in the definition of medical malpractice. As such, Plaintiff's allegations squarely fall under the statutory definition of a medical malpractice action. Because a medical malpractice action is a state tort claim and provides an adequate state-law remedy to Plaintiff, applicable law

does not permit Plaintiff's *Bivens* claims against Dr. Martinez to stand.

### B. Dr. Martinez is Not Subject to a *Bivens* Claim Because He is a Private Physician, Not a Federal Officer.

The purpose of the holding in *Bivens* is to deter individual <u>federal officers</u> from committing constitutional violations. *Malesko*, 534 U.S. at 62, 122 S.Ct. at 516 (emphasis added). In both cases where the core holding of *Bivens* was applied, *Davis and Carlson, supra,* the Court recognized that it only applies under limited circumstances against federal officers that are found to have abused their constitutional authority. 534 U.S. at 67, 122 S.Ct. at 520-21. Since then, the Court has "consistently refused to extend *Bivens* liability to any new context <u>or new category</u> of defendants." *Id.* at 68, 122 S.Ct. at 521 (emphasis added). Defendant anticipates Plaintiff will argue that Dr. Martinez was acting under the cloak of federal authority or at the direction of federal officers. Plaintiff would be wrong in doing so for two reasons. First, inquiry into whether Dr. Martinez was acting as a "federal agent" or at the direction of federal agents in performing the exam is irrelevant because a clearly defined state court remedy exists. *See infra.* Second, Dr. Martinez is and was at all times a private individual working at a private hospital. Dr. Martinez was a private physician at the time, not a federal official or agent. Plaintiff's own First Amended Complaint identifies Dr. Martinez as "a medical doctor employed by Holy Cross and/or TeamHealth and who, at all times material, practiced medicine at Holy Cross." (See Pl.'s First Amd. Complaint, ¶ 8).

In both *Minneci* and *Malesko, supra,* the private employment status of the defendants in question was integral to the Court's decisions. The *Minneci* court focused largely on the prison personnel's employment by a private firm, stating that "for present purposes that fact – of employment status – makes a critical difference." 132 S.Ct. at 623. The *Minneci* Court explained the significance of the prison personnel's private employment status by citing *Malesko, supra. Id.* The *Malesko* Court declined to imply a *Bivens* action where, like

6

*Minneci*, a prisoner's Eighth Amendment-based suit was brought against a private corporation managing a federal prison. 534 U.S. 61.

The *Malesko* Court found the employment status of the prison personnel distinguished the case from *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, *supra*, one of the only two cases in which *Bivens* had been extended during the preceding 30 years. In *Carlson*, a federal prisoner sought damages from personnel employed by the government, where in contrast, the individuals in *Malesko* were privately employed. 132 S.Ct. at 623 (citing 446 U.S. at 25, 100 S.Ct. 1468). As the *Minneci* court explained in contrasting the two cases, "the potential existence of an adequate 'alternative, existing process' differs dramatically in the two sets of cases. Prisoners ordinarily *cannot* bring state-law tort actions against employees of the Federal Government. But prisoners ordinarily *can* bring state-law tort actions against employees of a private firm." *Id.* (emphasis in original).

The *Minneci* Court previously addressed the impropriety of applying *Bivens* to a non-government official, again by citing *Malesko*:

> For another thing, the [*Malesko*] Court specifically rejected Justice Stevens'…dissenting opinion…that a prisoner's suit against a private prison-management firm should fall within *Carlson's* earlier holding because such a firm, like a federal employee, is a "federal agent." In rejecting the dissent's suggestion, the Court explained that the context in *Malesko* was "fundamentally different" from the contexts at issue in earlier cases, including *Carlson*. That difference, the Court said, reflected in part the nature of the defendant, *i.e.,* a corporate employer rather than an individual employee, and in part reflected the existence of "alternative effective" state tort remedies.

*Id.* at 623-24 (internal citations omitted) (citing *Malesko*, 534 U.S. at 70, 72-73). Because Dr. Martinez was clearly acting as a private physician at a private hospital when Plaintiff was brought there an examination, the law does not permit a *Bivens* claim against Dr.

7

Martinez. To the extent Plaintiff will argue that Dr. Martinez was acting as a federal officer, Plaintiff's proper cause of action is the available and adequate state tort law claim of medical malpractice against Dr. Martinez defined in A.R.S. § 12-561 *et seq.* Because applicable law does not permit extension of *Bivens* claims to private physicians, the *Bivens* claims against Dr. Martinez must be dismissed.

### III.     CONCLUSION

Plaintiff has an adequate state law remedy against Dr. Martinez, a private physician, for her alleged grievances. As such, there is no basis to extend *Bivens* to this medical malpractice claim against Dr. Martinez. Plaintiff's *Bivens* claims against Dr. Martinez should therefore be dismissed.  Since the only claims asserted against Dr. Martinez in this matter are *Bivens* claims, Dr. Martinez is entitled to a complete dismissal from this matter.

RESPECTFULLY SUBMITTED this 7th day of February, 2017.

**BROENING OBERG WOODS & WILSON, P.C.**

By */s/Michelle L. Donovan*
Michelle L. Donovan
Jessica J. Kokal
Post Office Box 20527
Phoenix, Arizona  85036
*Attorneys for Defendant Martinez*

### CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that on February 7th 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants:

1 | Matthew D. Davidson
**LAW OFFICES OF MATTHEW C. DAVIDSON, LTD**.
2 | 1859 N. Grand Avenue, Suite 1
Nogales, AZ 85621
3 | *Attorneys for Plaintiff*

4 | Brian Marchetti
**MARCHETTI LAW, P.L.L.C.**
5 | 290 N. Meyer Avenue
Tucson, AZ 85701
6 | *Attorneys for Plaintiff*

7 | Laura V. Mac Ban
Michael L. Linton
8 | **MAC BAN LAW OFFICES**
Skyline Esplanade
9 | 1795 E. Skyline Drive, Suite 155
Tucson, AZ 85718
10 | *Attorneys for Defendants Holly Cross Hospital, Inc. and Ascension Arizona, Inc.*

11 |
Michael A. Ambri
12 | Melissa Marcus Kroeger
13 | **UNITED STATES ATTORNEY**
**DISTRICT OF ARIZONA**
14 | 405 W. Congress Street, Suite 4800
Tucson, Arizona 85701-5040
15 | *Attorneys for Defendant United States of*
16 | *America and Defendant Leggett*

17 | Carolyn Armer Holden
18 | Michael J. Ryan
**HOLDEN AND ARMER, PC**
19 | 4505 East Chandler Blvd., Suite 210
Phoenix, Arizona 85048
20 | (480) 656-0460
21 | *Attorneys for Defendants Quantum Plus, Inc. dba Teamhealth West*

22 |
23 |

24 | By  */s/Gina Barrera*

25 |

26 |

9