**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ashley Cervantes,<br><br>    Plaintiff,<br><br>vs.<br><br>United States of America; United States Customs and Border Protection Agent Shameka Leggett and "John Doe" Leggett; Unknown United States Customs and Border Protection Agents; Holy Cross Hospital, Inc.; Patrick F. Martinez and "Jane Doe" Martinez; Quantum Plus, Inc., Dba Teamhealth West; John Does 1-5; Jane Does 1-5; XYZ Corporations 1-5; and ABC Partnerships 1-5,<br><br>    Defendants. | No. CIV 16-334-TUC-CKJ<br><br>**ORDER** |

Pending before the Court are the Motions for Summary Judgment filed by Defendant Quantum Plus, LLC ("Quantum Plus") (Doc. 128), Defendant Holy Cross Hospital, Inc. ("Holy Cross") (Doc. 130), and Defendant Patrick F. Martinez ("Martinez") (Doc. 149). Oral argument has been requested. However, the issues are fully presented in the briefs and the Court finds it would not be assisted by oral argument. The Court declines to schedule this matter for oral argument. LRCiv 7.2(f).

Summary judgment will be granted in favor of Defendants and against Plaintiff for the reasons stated herein.

*Factual and Procedural Background*

On October 18, 2014, Ashley Cervantes ("Cervantes"), a natural-born United States citizen, crossed into Mexico at the international border at the Nogales Port of Entry. After breakfast, Cervantes crossed back into the United States. Cervantes was detained at the Point of Entry for at least a few hours by Customs and Border Patrol ("CBP") agents and was subsequently taken into custody.

CBP agents requested authority to transport Cervantes to a medical facility. As set out in the United States Public Health Services Division of Immigration Health Services Treatment Authorization Request ("TAR"), "potential internal carrier of foreign substance" was stated as the diagnosis/symptoms and the "course of treatment" was identified as a request for an x-ray. Cervantes Statement of Fact ("CSOF"), Ex. 3-C (Doc. 136-1). Cervantes assert that she did not use drugs while in Mexico, did not possess any contraband at the time she re-entered the United States and did not have any drugs on her person during her interactions with Defendants.

Cervantes was then transported, in handcuffs, to Holy Cross for the purpose, as stated on the TAR, of undergoing x-rays to determine whether she was carrying contraband. Cervantes was never X-rayed. Cervantes asserts Defendant Patrick F. Martinez ("Martinez") entered the exam room, asked a few cursory questions, and performed invasive body exams upon Cervantes. Cervantes asserts the exam was conducted without her consent, while Martinez asserts that Cervantes verbally agreed to the examination. The search was conducted without a warrant and with the CBP agents watching.

Cervantes asserts Martinez was not providing medical treatment, nor was he testing or evaluating Cervantes for an emergent medical condition. Cervantes asserts Martinez was acting as an extension of CPB for the express purpose of searching her for contraband. Martinez asserts he was a private physician working at a private hospital, not employed by CBP, and not acting on behalf of CBP.

On June 8, 2016, Cervantes filed a Complaint against the United States, CBP agents, Martinez, Holy Cross, and Ascension Arizona, Inc. An October 6, 2016 Amended

- 2 -

1  Complaint alleges claims against the United States, CBP agents, Martinez, Holy Cross, and
2  Quantum Plus. The Amended Complaint alleges violations of *Bivens*, negligent hiring, and
3  the Federal Torts Claims Act.[1]

*Quantum Plus and Holy Cross Motions for Summary Judgment* (Docs. 128 and 130)

Quantum Plus asserts it sought "assurances that no vicarious liability claims were being brought against Quantum Plus" and that Cervantes's response was that "[v]icarious liability is inapplicable to Bivens and §1983 claims. As such, it is legally [impossible] for a Bivens claim to be pursued against [Quantum Plus]. [Quantum Plus] is named in Count Seven only[,]" the claim for negligent hiring of Quantum Plus' agents/employees. Quantum Plus MSJ (Doc. 128), p. 2. Quantum Plus seeks summary judgment on this claim.

Quantum Plus asserts that Cervantes may not assert a negligent hiring, training, and supervision claim when the only tortious conduct alleged against the employee is a *Bivens* claim and asserts this would go against the well-established purpose of the *Bivens* claim and essentially allow a *Bivens* claim against a private corporation. In addition to Quantum Plus' arguments, Holy Cross asserts that Arizona does not recognize a *Bivens* claim as an underlying tort for which Holy Cross may be held liable under the state tort of negligent hiring, training, or supervision.

Cervantes acknowledges that the claim against Martinez is a *Bivens* claim, but asserts the claims against Quantum Plus and Holy Cross are state torts (negligent hiring, training, supervision) based on independent actions of Quantum Plus and Holy Cross. Indeed, Cervantes argues that Quantum Plus and Holy Cross are liable for negligently allowing the body cavity searches to be performed on Cervantes in violation of the applicable standard of care and the operative Holy Cross policy. Rather than a theory of vicarious liability by Quantum Plus and Holy Cross, Cervantes argues that these Defendants' independent actions

---

[1] The claims against the United States and Shameka Leggett have been resolved. (Doc. 118).

- 3 -

provide the liability for their negligent actions.

In *Bivens*, the Supreme Court held that a citizen whose Fourth Amendment rights were violated by a federal officer could sue for damages. 403 U.S. at 396-97. This marked the first time that the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). The Supreme Court has extended *Bivens* only twice: first to a gender discrimination claim brought under the equal protection component of the Fifth Amendment's Due Process clause, and later to an Eighth Amendment violation by prison officials. *Davis v. Passman*, 442 U.S. 228, 248-49 (1979); *Carlson v. Green*, 446 U.S. 14, 24-25 (1980). "Since *Carlson*, however, the Supreme Court has consistently refused to extend *Bivens* liability to any new context or new category of defendants." *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1119 (9th Cir. 2009) (internal quotations and citation omitted). For example, the Supreme Court has declined to extend *Bivens* to claims of First Amendment violations by federal employers, *Bush v. Lucas*, 462 U.S. 367 (1983), and due process violations stemming from wrongful denials of Social Security disability benefits, *Schweiker v. Chilicky*, 487 U.S. 412 (1988).

Cautioning that a "freestanding damages remedy for a claimed constitutional violation . . . is not an automatic entitlement," the Supreme Court has articulated a two-step test for determining whether to recognize a *Bivens* remedy. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). First, the Court determines whether there is "any alternative, existing process for protecting the interest[.]" *Id*. "Such an alternative remedy would raise the inference that Congress 'expected the Judiciary to stay its *Bivens* hand[.]'" *W. Radio Servs.*, 578 F.3d at 1120 (quoting *Wilkie*, 551 U.S. at 554). This is true even if the alternative process does not afford complete relief; "[s]o long as the plaintiff ha[s] an avenue for some redress, bedrock principles of separation of powers foreclose[ ] judicial imposition of a new substantive liability." *Malesko*, 534 U.S. at 69. If the Court finds "that Congress intended a statutory remedial scheme to take the place of a judge-made remedy," the inquiry ends. *See W. Radio Servs.*, 578 F.3d at 1120. If the Court cannot draw this inference, it moves

- 4 -

1   to step two and "asks whether there nevertheless are 'factors counseling hesitation' before
2   devising such an implied right of action." *Id.* (quoting *Wilkie*, 551 U.S. at 550).

3   Quantum Plus also points out that the Supreme Court has determined that "*Bivens*'
4   purpose is to deter individual federal officers, not the agency, from committing
5   constitutional violations . . . [T]he threat of suit against an individual's employer was not the
6   kind of deterrence contemplated by *Bivens*. *Malesko*, 534 U.S. at 62. Cervantes does not
7   dispute these legal principles.

8   The Court agrees with Defendants that *Bivens* is appropriately not extended to
9   include the claim against Quantum Plus and Holy Cross. However, the dispute between the
10  parties is whether the state tort claims against Quantum Plus and Holy Cross are considered
11  an extension of *Bivens* or independent state torts.

12  Quantum Plus argues that Cervantes's claim completely relies on *Bivens* to create the
13  liability of Quantum Plus. Specifically, if the theory of an employee's underlying tort fails,
14  an employer cannot be liable for negligent hiring. *Mulhern v. City of Scottsdale*, 165 Ariz.
15  395, 398, 799 P.2d 15, 18 (App. 1990). Citing *De Graff v. Smith*, 62 Ariz. 261, 266, 157
16  P.2d 342, 344 (1945), Cervantes argues that a "verdict in favor of the servant does not bar
17  recovery against the master for negligence 'on which, independently of the acts of the
18  servant, liability may be predicated.'"). However, the *De Graff* Court was discussing
19  circumstances in which another employee has been negligent. In other words, contrary to
20  the argument of Cervantes, the Court was not saying that the employer's independent actions
21  provided liability without consideration of the actions of the employee.

22  Indeed, "[f]or an employer to be held liable for the negligent hiring, retention, or
23  supervision of an employee, a court must first find that the employee committed a tort."
24  *Gallagher v. Tucson Unified Sch. Dist.*, 237 Ariz. 254, 257, 349 P.3d 228, 231 (App. 2015).
25  In other words, Cervantes's claim relies upon the underlying *Bivens* tort allegedly committed
26  by Martinez. Indeed, courts have recognized that, "[b]ecause of [the] dependency [between
27  an employer's negligent hiring liability and the negligent acts of the employee] . . . negligent
28  hiring claims are similar to claims based on vicarious liability." *Williams v. McCollister*,

- 5 -

671 F. Supp. 2d 884, 891 (S.D. Tex. 2009); *see also Hosp. Auth. of Valdosta/Lowndes Cty. v. Fender*, 342 Ga. App. 13, 23, 802 S.E.2d 346, 355 (2017) ("Like claims based on respondeat superior, claims against a defendant employer for the negligent hiring, training, supervision, and retention of an employee are derivative of the underlying tortious conduct of the employee."); *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 657 (Tex.App. 2002) (although negligent hiring/training/supervision torts "are considered independent acts of negligence," they are "a means to make a defendant liable for the negligence of another."). When this is considered in light of the Supreme Court's determination that "*Bivens*' purpose is to deter individual federal officers, not the agency, from committing constitutional violations[,] *Malesko*, 534 U.S. at 62, it appears that Cervantes is seeking to circumvent restrictions to *Bivens* causes of action. As pointed out by Holy Cross, accepting Cervantes's argument "would mean that all claimants have to do to circumvent the plain and unambiguous holdings in *Correctional Services Corporation*, and *Minneci[,]* [565 U.S. 118 (2012)]. *supra*, is to name the federal agency or private corporation as having failed to "negligently supervise" or train the individual committing the alleged Fourth Amendment violations, rendering their holdings meaningless." Holy Cross MSJ Reply (Doc. 142), p. 4.

Additionally, to any extent Cervantes is attempting to argue a malpractice claim as the underlying tort for the negligent hiring, training, and supervision claim, the Court agrees with Holy Cross that this claim was not pleaded by Cervantes and may not now be raised. *Samica Enterprises, LLC v. Mail Boxes Etc. USA, Inc*., No. CV 06-2800 ODW (CT), 2010 WL 807440, at *3 (C.D. Cal. Feb. 26, 2010) (aff'd *sub nom. Samica Enterprises LLC v. Mail Boxes Etc., Inc.*, 460 F. App'x 664 (9th Cir. 2011) (plaintiff cannot raise new claims in opposition to summary judgment motion that were not pleaded); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1316 (11th Cir. 2004).

Holy Cross also argues that the underlying tort of a negligent hiring, training, or supervision claim requires the employee to have committed an underlying tort recognized under Arizona state law. Cervantes disputes this assertion. The Court finds it need not

resolve this issue.[2]

*Martinez Motion for Summary Judgment* (Doc. 149)

Martinez asserts Cervantes cannot pursue a *Bivens* action against him because an alternate remedy is available to her. *See e.g. Malesko*, 534 U.S. at 70; *Schweiker*, 487 U.S. at 414 (*Bivens* claim was not available to recipients of Social Security disability benefits who claimed that benefits had been denied in violation of the Fifth Amendment because there is an administrative scheme that provides a meaningful alternative remedy). Indeed, Martinez points out that the essence of a *Bivens* claim is that it provides a plaintiff in search of a remedy with a claim when one is not otherwise available. Martinez asserts that Cervantes could have pursued a medical malpractice claim in state court. *See e.g. Carter v. The Pain Center of Arizona, Inc.*, 239 Ariz. 164, 367 P.3d 68 (App. 2016) (Arizona law allows a plaintiff to pursue a medical battery claim when a physician performs a procedure without the patient's consent or when a physician fails to operate within the limits of the patient's consent). Here, Martinez asserts he obtained the verbal consent of Cervantes while Cervantes asserts she only consented to an x-ray (which was never conducted). In either circumstance, however, Cervantes would have a claim to pursue under *Carter*. Indeed, the Supreme Court has discussed how prisoners cannot ordinarily bring state-law tort actions against employees of the federal government (without the remedy provided by *Bivens*). However, prisoners can ordinarily bring state-law tort actions against employees of a private firm. *Minneci*, 565 U.S. at 126. Because Cervantes would have a state-law tort action available against Martinez, a *Bivens* claim would not be available against Martinez.

---

[2]Holy Cross argues that, "quite significantly," Cervantes has not provided any authority that the underlying tort needed for a state-based negligent supervision claim must be recognized under Arizona law. Holy Cross MSJ Reply (Doc. 142), p. 4. The Court notes that Defendants have similarly failed to provide any specific or factually similar authority that a *Bivens* tort cannot be the underlying tort.

- 7 -

1 However, Cervantes asserts Martinez did not provide medical care to her and, indeed, 2 her expert has opined that Cervantes "did not present to the emergency department for 3 medical care or in an emergent situation" and "was not a patient for medical purposes." 4 Response to Martinez MSJ, Ex. 3 (Doc. 153-1), pp. 5 and 6. Martinez asserts, however, the 5 medical records from Holy Cross establish the health-related nature of the contact between 6 Martinez and Cervantes. For example, the documents show that Cervantes's vitals, medical, 7 social and surgical history were taken, a comprehensive physical examination occurred, and 8 the clinical impression is noted as "medical clearance." Clearly, this is a material issue in 9 dispute. However, the parties do not discuss whether this issue is an issue of fact or law. 10 At least one court considering whether such a search is constitutional finds it relevant 11 whether medical standards of care have been followed. *People v. Bracamonte*, 15 Cal. 3d 12 394, 404, 540 P.2d 624, 631 (1975). This would seem to imply it is an issue of law and is 13 health-related because medical standards are to apply. Further, it appears at least one court 14 is considering malpractice claims in similar circumstances. *See Bustillos v. El Paso Cty.* 15 *Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018); Jodine Mayberry, *Hospital Waived Immunity* 16 *in Body Search for Drugs, Plaintiff Argues*, 12 Westlaw Journal Medical Malpractice 1 17 (2016).

18 The Court finds the issue of whether medical care was provided presents a question 19 of law. Further, based on the records and the health-related nature of the contact between 20 Martinez and Cervantes, the Court finds Martinez provided medical care to Cervantes. This 21 provides an alternate remedy to Cervantes – specifically, a medical malpractice action. *See* 22 A.R.S. § 12-561(2). Because Cervantes has a state-law tort action available against 23 Martinez, the *Bivens* claim alleged against Martinez must fail.

24 Martinez further argues that Cervantes cannot pursue a *Bivens* action against him 25 because Martinez is a private person who was acting in a private capacity. For example, in 26 *Malesko*, the Supreme Court determined that a *Bivens* claim could not be brought against 27 a private corporation. 534 U.S. at 63. In *Minneci* the Court further determined that a *Bivens* 28 claim could not proceed against corrections officers who were privately employed and the

- 8 -

alleged conduct was of a "kind that typically falls within the scope of traditional state tort law. 565 U.S. at 131. Although Cervantes argues *Minneci* is limited to the facts presented in that case, the reasoning of the Court in *Minneci* provides guidance to resolving the issue in this case. Initially, this Court recognizes that the facts regarding the parties in *Minneci* are similar to this case – each case involves a defendant employed by a non-governmental employer. The Supreme Court also found significant that "prisoners ordinarily can bring state-law tort actions against employees of a private firm." *Minneci*, 565 U.S. at 126. Further, state tort law "can help to deter constitutional violations as well as to provide compensation to a violation's victim." *Id*. at 127. Additionally, the alternate remedy, while it might not be as generous as a *Bivens* action, is adequate. *Id*. at 129-30. The conduct complained of by Cervantes "is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here)[.] *Id*. at 131.

Lastly, the parties dispute whether the conduct of Martinez was federal action such that *Bivens* liability may be imposed on him. The Court having determined Cervantes has an alternate state tort action available to her, the Court need not decide this issue.

Accordingly, IT IS ORDERED:

1. The Motion for Summary Judgment filed by Quantum Plus (Doc. 128) is GRANTED.

2. The Motion for Summary Judgment filed by Holy Cross (Doc. 130) is GRANTED.

3. The Motion for Summary Judgment filed by Martinez (Doc. 149) is GRANTED.

. . . . .

. . . . .

. . . . .

4. Summary judgment is awarded in favor of Quantum Plus, Holy Cross, and Martinez and against Cervantes. The Clerk of Court shall enter judgment in favor of Quantum Plus, Holy Cross, and Martinez and against Cervantes and shall then close its file in this matter.

DATED this 18th day of July, 2018.

_____
Cindy K. Jorgenson
United States District Judge